[No. 19002. Department Two. April 28, 1925.]

G. W. Steele, *Respondent,* v. F. E. Barash *et al.,* *Appellants.*[1]

Damages (80, 84)—Excessiveness—Physical Suffering — Injuries to Hip or Leg. A recovery of $5,000 for personal injuries is not excessive, where plaintiff was forty-two years of age, in good health, earning eight dollars a day at a skilled trade, and he sustained a severe shock, a dislocated hip, fractures of both bones of the leg below the knee, and underwent severe operations, suffering intensely and sustained a pecuniary loss of over $2,000.

Appeal from a judgment of the superior court for King county, Ralston, J., entered February 19, 1924, upon the verdict of a jury rendered in favor of the plaintiff for personal injuries. Affirmed.

*Fred G. Clarke,* for appellants.

*Walter B. Allen* and *Howard O. Durk,* for respondent.

Tolman, C. J.—This is a personal injury case in which the plaintiff recovered below a judgment for $5,000. The defendants, appealing, raise in this court only the question of the excessiveness of the recovery.

The case was tried to a jury whose verdict is the basis of the judgment. The trial judge, although this same question was presented in the motion for a new

[1]Reported in 235 Pac. 1.

trial, declined to set aside or reduce the verdict; and, after a careful consideration of the testimony going to the extent of the injuries and the pain and suffering caused thereby, we do not see our way clear to do so.

Respondent was a man of forty-two years, in good health, never having been ill or seriously injured, and was earning eight dollars per day at a skilled trade. His injuries were such as to cause an extremely severe shock, his right hip was dislocated, both bones of the right leg were fractured between the knee and the ankle, and he was otherwise severely cut, bruised and lacerated. He lay for more than an hour after the accident, awaiting an ambulance to take him to the hospital. He underwent severe operations to reduce the dislocation and the fractures, and was compelled to lie flat on his back for weeks with no opportunity to move or change position, suffering intense pain all of the time; was unable to sleep more than an hour in the twenty-four, for three or four months, was confined in the hospital five or six weeks, thereafter used crutches for a considerable time, and six months after the accident he tried to go to work but found himself unable to do so. He did, however, begin to work some eight months after the accident, though still suffering to a considerable extent. His physician's testimony is abstracted by the appellant as follows:

"The man was hunched up and evidently very sick. I examined him and found he was very badly injured. I didn't know the extent of his injury at that time except I was certain he had a broken leg, and was evidently very severely shocked. He had a rapid pulse, and was covered with profuse perspiration, and looked very ill.

"He was taken to the Seattle General Hospital, and I found in addition to his broken leg, a dislocated hip. We gave him a few drops of anaesthetic, but his condition was so bad I realized if we were going to reduce the dislocation we were going to get a dead man, so I

stopped. I waited, I think, until the next day. Then I took him to the operating room, put him to sleep, to reduce the dislocation. At that time I was unable to complete the reduction of the fracture in the leg because the manipulation necessary to bring about the reduction of the hip was rather an extensive one, and I didn't want to expose him to any more unnecessary risk.

"Two or three days later I reduced the fracture in the leg. There were two bones broken. This picture which I have shows the dislocation. The head of the bone is out of the socket above and behind. This is the thigh bone, and is pushed up on the outside. It would look from this picture as though a part of the bone were in the socket. That is not true. That is because of the shadow that is cast on the plate. The entire head of the bone was out of the socket. That meant there was a hole torn in the capsule that surrounds the head of the bone, and the head of the bone had to be so manipulated that it would go back through the hole and into the socket, and then that hole closes up in course of time as a result of the process of nature. . . .

"I had succeeded in getting those two bones in perfect position at the time this plate was taken. You must remember in the reduction of this fracture, I was continually faced with the fact of having a man who had a dislocated hip also; when I did too much on one end, I would disturb what I had done on the other end.

"Now, this plate which was taken subsequently, shows the man's shin bone is in very good condition. The position of the shin bone is not perfect anatomically. If the physician gets the bones back exactly as they were before broken, that is known as a perfect anatomical reduction. I got a perfect reduction of Mr. Steele's hip, but I didn't get a perfect anatomical reduction of the bones of the leg.

"Now, that is the perfect functional reduction. The function is perfect, but the anatomy is not. Function means that he has the power to use it, and anatomy means a restoration of the part as it was before the injury. I did not get him that.

"Now, this plate showed what I was trying to point out, as one part of the bone slips a little bit over to the side; that is perfect function, but imperfect anatomy. . . .

"I have gotten a perfect reduction of his hip. I can't say that the rent in the capsule is completely healed over. You base your opinion on the fact that the head stays in position. It is like a rent in your clothes. You may have a torn coat and close over the tear, but it is not as good as it was before. The fracture on the right leg was half way between the knee and the ankle; there are two bones there, and an injury, such as plaintiff suffered, would cause great pain and suffering, very great.

"Mr. Steele was in the hospital some five weeks and five days. He was in bed all the time. The leg was put in splints, and he had to keep perfectly quiet. He had to be kept very much more quiet on account of the fracture of his leg than he would have had he been confined only with a dislocated hip joint. I kept him flat on his back for a long time. I don't think there was any permanent injury to his central nervous system.

"This man had a great deal more to contend with than just a fracture. He had a very severe shock. I should say that if the man was completely recovered from the condition which this man was in at the time I saw him—if he was perfectly well in a year, it would be all you could expect. This man was suffering from a double fracture of the leg, had a dislocated hip, and was under this very severe shock. I would say from my experience, that Mr. Steele has not yet thoroughly recovered, and that at the present time he is unable to work like his former self. . ."

When the medical and hospital expenses and the lost time, at eight dollars per day, are deducted, it is seen that the jury allowed less than $3,000 for the pain and suffering and the permanent injury, if any there be, and this is not out of line with the modern cases upon which appellant seems to rely. In the light of the present purchasing power of the dollar, we cannot say that the verdict was excessive; the trial court held that

it was not; we are constrained to affirm his judgment. Judgment affirmed.

MITCHELL, FULLERTON, HOLCOMB, and MACKINTOSH, JJ., concur.